(No. 5569. Decided July 24, 1905.)

GLOBE NAVIGATION COMPANY, LIMITED, *Respondent,*

v. MARYLAND CASUALTY COMPANY, *Appellant.*[1]

INDEMNITY—COST OF DEFENDING SUIT—LIABILITY UPON ONE OF SEVERAL CAUSES. Where an indemnity company was required by its bond to defend actions for negligence at its own expense, and made defense to an action for negligence, in which was joined, also, a right of action upon a maritime contract for medical attendance, it is liable for all the costs and expense incurred, where the record fails to show what amount was expended to establish the defense to the cause of action upon the maritime contract.

ESTOPPEL—INDEMNITY—BONDS—INDEMNITY AGAINST PERSONAL IN-JURIES FROM NEGLIGENCE—RECOVERY ON MARITIME CONTRACT—SURETY'S DEFENSE OF SUIT—DISMISSAL OF APPEAL WITH PROMISE TO PAY JUDG-MENT. An indemnity company which, in defending an action for a loss, requests the dismissal of the appeal and promises to pay the judgment, is estopped to assert that it did not know the true nature of the claim and is not liable for the amount of the judgment, where it appears that, pursuant to its bond, it undertook the defense through attorneys selected by it, upon representations of the defendant, made in good faith, that the action was to recover for negligence in the operation of a ship, covered by the bond, although a right of action upon a maritime contract not covered by the bond was included, upon which judgment was entered, the claim for negligence being defeated.

1Reported in 81 Pac. 826.

ESTOPPEL—INTENT. A design to mislead is not necessary to create an estoppel, where the conduct is such as to induce a reasonable man to act upon it, and the defendant was warranted in assuming that the unconditional order to dismiss the appeal was advisedly made.

SAME—EQUITY. It cannot be urged to defeat the estoppel that the parties stood upon an equal footing, since the duty of making the defense devolved upon the indemnity company.

SAME—KNOWLEDGE OF FACTS—NEGLIGENCE. In such a case, the estoppel is not defeated by reason of the fact that the company did not have full knowledge of the facts respecting the judgment, which was entered in Hawaii, where it had a copy of the libel and was in communication by means of which the fact could have been ascertained; since it was reasonably under obligations to ascertain the facts, and was more than ordinarily negligent in ordering the dismissal without doing so; and since it is bound by the knowledge of the attorneys, who only nominally represented the defendant.

SAME—PREJUDICE TO EFFECT ESTOPPEL. An abandonment of the right of appeal is presumed to be prejudicial, hence the estoppel was not without prejudice from the fact that the judgment was without error and would have been affirmed; since that fact cannot be demonstrated, and evidence to prove it is inadmissible.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 29, 1904, upon findings in favor of the plaintiff, after a trial before the court, a jury being waived, in an action upon an indemnity bond. Affirmed

*Graves, Palmer, Brown & Murphy,* for appellant. There can be no estoppel where the party did not have full knowledge of the facts, unless its appearance was the result of gross negligence. *Hughes v. New York Life Ins. Co.,* 32 Wash. 1, 72 Pac. 452; 11 Am. & Eng. Ency. Law (2d ed.), 433; 2 Herman, Estoppel & Res Judicata, p. 108, § 957; *Weaver v. Peasley,* 163 Ill. 251, 45 N. E. 119, 54 Am. St. 469; *Hammond v. Evans,* 23 Ind. App. 501, 55 N. E. 784; *Crabtree v. Bank of Winchester,* 108 Tenn. 483, 67 S. W. 797; *Baldwin v. German Ins. Co.,* 113 Iowa 314, 85 N. W. 26, 86 Am. St. 375; *Smith v. Sprague,* 119 Mich. 148, 77 N. W. 689, 75 Am. St. 384; *Kirchman v. Standard Coal*

*Co.,* 112 Iowa 668, 84 N. W. 939, 52 L. R. A. 318; *Brant v. Virginia Coal & Iron Co.,* 93 U. S. 326, 23 L. Ed. 927; *Nash v. Baker,* 40 Neb. 294, 58 N. W. 706; *Parkey v. Ramsey,* 111 Tenn. 302, 76 S. W. 812; *Bennecke v. Connecticut Mut. Life Ins. Co.,* 105 U. S. 990, 26 L. Ed. 355. The mere loss of a right to appeal when the judgment below is not erroneous, is without prejudice, and will not work an estoppel. *Hughes v. New York Life Ins. Co., supra; Getchell etc. Lum. Mfg. Co. v. Employers' Liability Assur. Corp.,* 117 Iowa 180, 90 N. W. 616, 62 L. R. A. 617; *Sioux Valley State Bank v. Kellogg,* 81 Iowa 124, 46 N. W. 859; *Brigham Young Trust Co. v. Wagener,* 12 Utah 1, 40 Pac. 764; *McCarthy v. Mutual Relief Ass'n,* 81 Cal. 584, 22 Pac. 933; *Warder v. Baker,* 54 Wis. 49, 11 N. W. 342; *Frei v. McMurdo,* 101 Wis. 423, 77 N. W. 915; *Smith v. Yager,* 85 Iowa 706, 50 N. W. 224.

*H. R. Clise,* for respondent.

HADLEY, J.—This is a suit upon an indemnity bond. The plaintiff is the owner of vessels plying the waters of the Pacific Ocean. Among vessels so owned and operated, is a certain schooner, called the "Willis A. Holden." The defendant, for a valuable consideration, executed and delivered to plaintiff its certain policy of indemnity, whereby it agreed to indemnify the plaintiff against loss for damages on account of bodily injuries accidentally suffered by any employee of plaintiff while on duty on or about its vessels, caused by the negligence of the assured, and resulting from the operation of its vessels. The schooner above mentioned was engaged in a voyage from Newcastle, in New South Wales, to the Pacific coast of the United States, by one or more ports in the territory of Hawaii, and on board of said vessel was a certain seaman named "Donovan," who was, by the captain of said schooner, regularly employed as second mate during said voyage. While in the performance

of his duties, on or about September 24, 1903, he met with an accident on board the schooner, whereby he suffered certain injuries. On account of said injuries said Donovan, on or about October 23, 1903, in the district court of the United States for the district of Hawaii, caused a certain libel and citation to issue out of said court against said schooner, claiming damages in the sum of $10,000. The schooner was, by the marshal of said district, seized and detained until such time as it was released by reason of the fact that the master, in behalf of this plaintiff, gave bond in the sum of $10,000 with the United States Fidelity & Guaranty Company as surety.

The complaint avers that, upon the seizure of the schooner, the plaintiff advised the defendant thereof, and that, at the request of defendant, plaintiff procured said bond for release, for which defendant agreed to pay; that plaintiff sent to defendant copies of the libel and proceedings in said action, and at its request employed attorneys to defend the libel, and caused an answer to be filed, denying the liability of this plaintiff for any damages whatsoever in the premises; that plaintiff took such other steps as were requested and advised by the defendant, the latter at all times agreeing to bear the expense of said defense, and to pay all charges incurred therein; that thereafter such proceedings were had in said action that said Donovan obtained a judgment against this plaintiff in the sum of $800; that, upon the entry of said judgment, the plaintiff at once advised the defendant thereof, and the latter instructed that an appeal should be taken to the proper court; whereupon the plaintiff took the necessary steps and incurred the necessary expense to perfect said appeal; that thereafter the defendant instructed the plaintiff to abandon the appeal, and then agreed with plaintiff to pay the said judgment; that the plaintiff, relying upon said instruction and promise, instructed the attorneys in charge of the defense in the action to abandon the appeal, and that the same was accordingly done; that thereafter

the defendant, without cause and unwarrantedly, refused to pay the judgment, and still so refuses; that plaintiff was compelled to pay the judgment, amounting with costs to $881.45, and that plaintiff also necessarily incurred other expense in the defense of the action, including witness fees, attorney's fees, costs of appeal, and other costs, in the sum of $675.54.   Judgment is demanded for the total sum of $1,556.99.

The defendant answered that the said United States district court rendered a decision in said cause wherein it found that the owner of the schooner, the plaintiff herein, and its agents in control thereof, were not guilty of any negligence in the operation of the vessel rendering the owner liable to said Donovan; but that the court further found that the owner failed to provide suitable medical assistance for said seaman after his injury, and that, for this reason only, it caused the said judgment to be rendered against the schooner and her tackle; that the obligation upon which the judgment was based was one growing out of the implied maritime contract of employment, and was not on account of any damages occasioned by the negligent operation of the vessel, which subject was alone covered by the policy of indemnity.   The answer further avers, that all of the directions and requests made by the defendant to the plaintiff with regard to the bond for releasing the schooner, and as to prosecuting a defense, were made solely upon the representations made by plaintiff to defendant that the former was being sued on account of damages alleged to have been occasioned by the negligent acts of those in charge of the schooner, and connected with its operation; that all directions given with regard to taking an appeal, and making a settlement after judgment, were given solely by reason of information from the plaintiff to the foregoing effect; that, as soon as the defendant ascertained that the judgment was given solely on account of the violation by plaintiff of its maritime contract to furnish Donovan with suitable medical

attendance, it informed plaintiff that it would neither pay the judgment nor be in any way responsible by reason thereof; that, if the plaintiff had informed defendant at the time of the rendition of the judgment of the true nature thereof, it would have disclaimed any liability, and would neither have said nor done anything regarding an appeal, a settlement, or other disposition of the case.

The plaintiff replied that, because of the matters alleged in the complaint, the defendant is estopped from setting up or offering in evidence any of the matters set up in the affirmative defense. It was stipulated that the cause should be tried before the court without a jury, and upon an agreed statement of facts. It was so tried, and the court made findings of facts and conclusions of law and entered judgment in favor of the plaintiff for the full sum demanded. The defendant has appealed.

There are no exceptions to the findings of facts, and the errors assigned relate wholly to the court's conclusion from the facts that appellant is estopped to deny its liability. The court found that the libel filed in said district court was based upon an alleged claim for damages growing out of the negligent operation of the vessel, and also from failure to supply the libellant with proper surgical treatment; that both appellant and respondent had in their possession copies of the libel, and both knew that the libellant claimed damages for negligence of operation and also for breach of the maritime contract; that, under the libel, being in part for personal injuries accidentally suffered through alleged negligence, the appellant was obligated by its policy of indemnity to defend the action. The facts with regard to the seizure of the vessel, and the employment of counsel at appellant's request to defend against the libel, are found substantially as alleged in the complaint, and as above set forth. The nature of the decision and judgment rendered by the admiralty court are found to have been as alleged in the answer and set out above. The facts concerning appellant's in-

structions to the respondent to appeal from the judgment, to thereafter withdraw the appeal, accompanied with the promise by appellant to pay the judgment, the subsequent refusal to pay, and the expense incident to the defense and appeal, are all found as alleged in the complaint and as above stated. It is found that the attorneys for the defense in the libel suit, while nominally representing this respondent, were, in truth and in fact, defending said libel as the attorneys and agents for this appellant. It is further found that the respondent has at all times acted in good faith in giving to appellant all information in its possession pertaining to said action in Hawaii, and that neither party to this action, save by the knowledge possessed by the attorneys in Hawaii, knew upon what ground alleged in the libel the said district court had given judgment; but that, notwithstanding this, the appellant instructed the respondent to abandon the appeal, and stated without qualification or condition that it would pay the judgment.

Appellant admits that it was under the obligation to defend against the libel, as far as the same had to do with negligence in the navigation of the schooner, and that it was liable for any damages that might be recovered as the consequence of such neglect. It admits its liability for at least a portion of the expense of making the defense, but argues that it is not liable for the whole thereof, for the reason that, under its policy of indemnity, it was not obligated to pay damages that might be recovered under one ground alleged in the libel, and which the defense necessarily resisted. The defense was, however, necessary for appellant's own protection. Its contract of indemnity required that it should defend the action at its own expense, and the court found that the amount was properly and necessarily expended in the defense and at appellant's request. The defense may have incidentally included a ground that appellant was not obliged to urge, but the record fails to disclose that the

amount expended was not necessary to establish the defense which appellant was bound to make. Without considering at this time the items of expense incurred after judgment by way of appeal and otherwise, we think appellant is liable under its contract of indemnity for the remaining items, they having been incurred in the defense of the action.

Referring now to the principal contention in the case which concerns appellant's liability for the amount of the Hawaiian judgment, it appears that the parties themselves have stipulated that both acted in good faith, by which it is understood that neither one attempted to deceive the other. It is also established that respondent withdrew its appeal and paid the judgment at appellant's request, relying upon the promise of the latter to reimburse it, and that otherwise the appeal would have been prosecuted. Appellant contends that it acted in the premises without actual knowledge of the true nature of the judgment, and under the belief that it was such a judgment as would establish appellant's liability to respondent. It argues that all the information it possessed came to it from respondent, and that although the latter did not wilfully deceive it, yet inasmuch as respondent was without knowledge of the true nature of the judgment, it failed to advise appellant thereof, but that it was the duty of the former to so advise the latter. It is therefore established that respondent made no attempt to mislead appellant.

It is also a fact that appellant was obligated to defend the action at its own expense, and that it did do so. It therefore became its duty to know the result of the defense it had prosecuted. It had a copy of the libel, and knew that a judgment was sought for breach of the maritime contract as well as upon the other ground. We have also seen that the court specifically found that the attorneys who conducted the defense were the attorneys and agents of appellant. The knowledge of the attorneys, therefore, became the knowledge of appellant, and the latter must be bound by it, especially in the absence of fraud or attempt on respondent's part to

mislead. The correspondence concerning the matter was conducted by cable and mail between Honolulu and Seattle, and between agents of the respective parties in Seattle, together with communications sent from Seattle to appellant's home office in Baltimore. No reason appears why appellant did not seek information as to the true nature of the judgment through the same medium of communication, which it is manifest it might have done, either from Seattle or Baltimore. Furthermore, it does not appear that respondent knew, at the time it received instructions to withdraw the appeal, that appellant had not availed itself of such means of full information. The instruction was unconditional that the appeal should be abandoned, accompanied with an unconditional promise to pay the judgment. Under all the circumstances it would seem that respondent was justified in assuming that appellant had fully advised itself as to its liability, and that being satisfied it preferred to pay the judgment rather than continue the litigation.

Appellant argues that, since it acted under an honest mistake, without full knowledge of the facts, there can therefore be no estoppel. Many authorities are cited to the effect that estoppel must be based upon full knowledge of the facts on the part of the party to be estopped. What we have said indicates our view that, under all the circumstances, appellant was legally chargeable with knowledge of the true facts. It is also an element of the principle urged by appellant that ignorance of the facts must not result from gross or inexcusable negligence. Appellant cites and quotes the following:

"It may be stated, as a general rule, that the representation or concealment relied on to sustain an estoppel must have been made with full knowledge of the facts by the party to be estopped, unless his ignorance was the result of gross negligence or otherwise involves gross culpability. . . ." 11 Am. & Eng. Ency. Law (2d ed.), 433.

Under the above stated rule, and in view of the circum-

stances, it is manifest that appellant was under the reasonable obligation to ascertain the facts, and that it could reasonably have learned them from the attorneys who conducted the very defense it had directed. When it failed to possess itself of the knowledge held by its own attorneys, and yet assumed to instruct respondent, knowing that the latter relied thereon, it was certainly neglectful in more than an ordinary degree.

" 'Negligence' has been defined to be 'the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.' It must be determined in all cases by reference to the situation and knowledge of the parties and all the attendant circumstances. What would be extreme care under one condition of knowledge, and one state of circumstances, would be gross negligence with different knowledge and in changed circumstances. The law is reasonable in its judgments in this respect. It does not charge culpable negligence upon any one who takes the usual precautions against accident, which careful and prudent men are accustomed to take under similar circumstances." *The Nitro-Glycerine Case,* 15 Wall. 524.

It is said that appellant had no intention to deceive or mislead respondent. But such an intent is not a necessary attendant of estoppel. The conduct creating the estoppel may be without such intention, if it is such as to induce a reasonable man to act upon it. 11 Am. & Eng. Ency. Law (2d ed.), 431. Decisions from many states are cited by the textwriter in support of the above proposition.

"It is not necessary to an equitable estoppel that the party should design to mislead. It is enough that the act was calculated to mislead and actually did mislead the defendants while acting in good faith, and with reasonable care and diligence, and that thereby they might be placed in a position which would compel them to pay a demand which they had every reason to expect was cancelled and discharged." *Blair v. Wait,* 69 N. Y. 113.

See, also, *Moore v. Brownfield,* 10 Wash. 439, 39 Pac. 113;
*Continental Nat. Bank v. National Bank,* 50 N. Y. 575;
*Wallerich v. Smith,* 97 Iowa 308, 66 N. W. 184; *Patterson
v. Hitchcock,* 3 Colo. 533; *Sullivan v. Colby,* 71 Fed. 460;
*Morgan v. Railroad Co.,* 96 U. S. 716; *Swain v. Seamens,*
9 Wall. 254.

It is further argued that the parties stood upon equal foot-
ing, that they possessed equal knowledge as to the facts, and
that in such case estoppel does not arise. It is true respondent
hurriedly employed attorneys in Honolulu to protect the ves-
sel against the libel soon after it was seized. But appellant
directed that the same attorneys should be employed in its
behalf to conduct the defense, the burden of which it there-
after assumed. From that time, as the court found, while
the attorneys nominally represented respondent, yet they actu-
ally represented appellant. Under such circumstances we
think it should not be said that the parties were equally
chargeable with knowledge. The duty of making the defense
was cast upon appellant. It undertook the defense through
attorneys it deliberately selected. It therefore became its
duty to be advised as to the full result. Respondent was
not under the immediate duty to know the result as to ap-
pellant's liability, since the latter by its contract of indem-
nity had agreed to prosecute the defense. If the result
established that appellant was not liable, then it should have
been careful to so inform respondent before it permitted the
latter to act under a misapprehension.

It is insisted that estoppel does not arise unless it is shown
that respondent has been actually prejudiced, and that it
does not appear that the judgment of the Hawaiian court
was wrong, and would have been reversed on appeal. That
is a matter this court cannot determine. This is not the
reviewing court, and the full record of the trial is not here,
so that we may even properly form an opinion as to whether
there was reversible error. Respondent offers in this court

both argument and authority in support of its contention that it would have been able to secure a reversal of the judgment, but as that question is not for us, we have not examined it. It is said by appellant that the presumption must be that the judgment was correct, and that respondent has not even alleged to the contrary in its complaint in this action. It may be true that such a presumption prevails as a general legal proposition, but the same may be said as to any judgment from which an appeal has been taken, and yet the right of appeal is a valuable right, and when taken is, in itself, a direct attack upon the judgment as having been erroneously entered. It is fully shown by this complaint that the initiatory steps for an appeal were duly taken. A statutory right of appeal is an absolute one and does not depend on the merits of the cause below. 2 Ency. Plead. & Prac., 21; *McCreary v. Rogers,* 35 Ark. 298; *Hewlett v. Shaw,* 9 Mich. 345; *Ware, Register v. McDonald,* 62 Ala. 81; *State ex rel. Boutte etc. v. Judge etc.,* 28 La. Ann. 547.

The respondent therefore had the absolute right to have the cause reviewed on appeal. It was induced to abandon that right by the conduct of appellant, and the latter should not now be heard to say that respondent was not prejudiced because of mere absence of a positive demonstration that it would have secured a reversal on appeal. No one except the Infinite Mind can determine that question to a certainty at this time. Not even the court that would have reviewed the case can now know whether in its view reversible error would have appeared or not. But the certain fact does appear that, by reason of appellant's conduct, respondent did not have the benefit of the wisdom and experience of the learned judges of the appellate tribunal, the United States circuit court of appeals. We therefore think appellant is now estopped to deny its liability to pay as it promised, which included both the amount of the judgment and the subsequently incurred costs. Its liability upon the first branch

of the case discussed, viz., for the costs of the former defense, having been determined, the judgment is in all things affirmed.

MOUNT, C. J., RUDKIN, FULLERTON, and CROW, JJ., concur.

ROOT, J., being disqualified, took no part.