[No. 3337-1. Division One. September 27, 1976.]

TRANSAMERICA INSURANCE GROUP, *Respondent*, v. CHUBB AND SON, INC., ET AL, *Appellants*, RESERVE INSURANCE COMPANY, ET AL, *Respondents*.

Guttormsen, Scholfield & Stafford and Jack P. Scholfield, for appellants.

Foulds, Felker & Gelfand, P.S., Thomas S. Felker, Reed, McClure, Moceri & Thonn, P.S., William R. Hickman, Dennis Smith, Lane, Powell, Moss & Miller, Robert W. Thomas, Arthur W. Harrigan, Jr., and Mark E. Johnson, for respondents.

WILLIAMS, C.J.—Transamerica Insurance Group commenced this action against Federal Insurance Company and its managing agent for a judgment declaring that a liability insurance policy issued by Federal to Gamel Construction Company and its associates is primary insurance protecting them from property damage claims arising from a landslide on their property located in the Alki Point District of Seattle. The Gamel interests were joined as third-party defendants and Reserve Insurance Company and Continental Casualty Company were joined as additional defendants. The Transamerica, Reserve, and Continental insurance companies moved for summary judgment. The court granted the motions and entered judgment declaring that Federal had waived its right to deny liability coverage for the landslide claims and was estopped from successfully asserting that defense against the Gamel interests and the other insurance companies. In its appeal, Federal argues that it did not waive the right to deny coverage and was not estopped from raising the defense of noncoverage, but that if it was estopped as to the Gamel interests, it was not estopped as to the other insurance companies.

The facts are that on January 10, 1973, the Gamel interests were protected in varying ways and amounts by liability policies issued by each of the insurance companies in this case. On that date, the landslide on the Gamel interests' property occurred, causing substantial damage to adjoining land. Before the end of January 1973, two of the property owners filed damage actions against the Gamel

interests. The defense was immediately tendered to Federal which accepted without reservation. Another claimant filed an action in February, and Federal accepted the defense of that without reservation, also. Federal conducted the defense in the three actions for 10 months, then denied coverage.

One of the elements of estoppel is prejudice. 14 R. Anderson, *Couch Cyclopedia of Insurance Law* § 51:79 (2d ed. 1965). The basic question to be decided is whether Federal's conduct in accepting and defending the actions prejudiced the Gamel interests as a matter of law. If it did, the trial court was correct in entering summary judgment; if prejudice must be shown as a matter of fact, the summary judgment must be vacated and the cause tried. The following from 14 R. Anderson, *Couch Cyclopedia of Insurance Law* § 51:80 (2d ed. 1965) supports the trial court's action:

> Where an insurer, without reservation and with actual or presumed knowledge, assumes the exclusive control of the defense of claims against the insured, it cannot thereafter withdraw and deny liability under the policy on the ground of noncoverage, prejudice to the insured by virtue of the insurer's assumption of the defense being, in this situation, conclusively presumed. So it has been held that an insurer is estopped to deny liability under a general contractor's comprehensive liability policy, where the insurer has control of the investigation and defense of an action against the insured and does not raise any question as to noncoverage or make any reservation of rights for almost a year, on the theory that the loss of the right of the insured to control and manage the case is itself prejudicial.

(Footnotes omitted.)

On June 8, 1976, Division Three of this court decided *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.*, 15 Wn. App. 608, 610, 550 P.2d 701 (1976), in which the same question is presented. The court said:

> Among the necessary elements of equitable estoppel, only the existence of prejudice to Hanson by the acts of Aetna is at issue. As a general rule, an insurer is estopped from withdrawing from the defense of its insured

when undertaken without reservation of rights if withdrawal will result in prejudice to the insured. Prejudice to the insured arising from withdrawal is not presumed. The insurer is not estopped from later raising noncoverage under the policy without substantial proof that the insured will actually be prejudiced by withdrawal. Only in extreme cases will prejudice be presumed, as where the insurer claims noncoverage after judgment and surrender of all right of appeal, making actual proof of prejudice impossible. The insured is then relieved of his affirmative burden of proof of prejudice. The present 2½-month delay in withdrawal does not create an extreme case.

(Footnotes omitted.) For these views, the court relied upon *Kitsap County Transp. Co. v. Pacific Coast Cas. Co.*, 67 Wash. 297, 300-01, 121 P. 457 (1912); *see Buchanan v. Switzerland Gen. Ins. Co.*, 76 Wn.2d 100, 109, 455 P.2d 344 (1969); *Reynolds v. Travelers' Ins. Co.*, 176 Wash. 36, 50, 28 P.2d 310 (1934); 14 R. Anderson, *Couch Cyclopedia of Insurance Law* §§ 51:79, 51:168 (2d ed. 1965); 7A J. Appleman, *Insurance Law and Practice* § 4693 (1962); Annot., 81 A.L.R. 1326, 1361-66 (1932); Annot., 38 A.L.R.2d 1148, 1157-60 (1962).

In the *Kitsap County* case, the liability insurer accepted, investigated, and then declined a personal injury claim against its insured. By agreement between the parties, the *insured* defended the action which resulted in judgment for the claimant. In the ensuing action by the insured against the insurer for the amount of judgment and the costs of the defense, the court decided that

[s]o long as it [the insured] undertook the defense of the case, knowing from its last agreement with respondent [the insurer] that the cost of such expense and any adverse judgment obtained would be a liability upon one or the other, as it might be determined whether or not the accident was within the terms of the policy, it was its duty to proceed with all diligence, and present every defense in fact and in law which the circumstances would permit. And until it appeared that appellant was, by the conduct of respondent, prevented from doing so, it

was not competent for it to tell the jury it was injured and prejudiced in its defense.

*Kitsap County Transp. Co. v. Pacific Coast Cas. Co., supra* at 300-01.

The other authorities cited in the footnote to *R.A. Hanson Co. v. Aetna Cas. & Sur. Co., supra,* show that in varying situations, some courts conclusively presume prejudice while others require that prejudice be proven. Of course, the insurer must have knowledge of the facts as Federal did in this case. *Ebert v. Balter,* 83 N.J. Super. 545, 200 A.2d 532 (1964). If Federal had not been in possession of the facts, it would have been required to seek them with reasonable diligence. *Merchants Indem. Corp. v. Eggleston,* 37 N.J. 114, 179 A.2d 505 (1962).

We believe that Federal's defense of the actions against the insured, the Gamel interests, is incompatible with denial of liability for three reasons: the first is that in assuming the defense of the actions, Federal effectively prevented the Gamel interests from defending themselves through the selection of investigators and attorneys of their own choosing. An insurance carrier may be more confident of its handling of claims, but an insured may with equal conviction prefer the individualized attention of its own counsel. By undertaking the defense, Federal deprived the Gamel interests of their valuable right to retain private counsel. *Sneed v. Concord Ins. Co.,* 98 N.J. Super. 306, 237 A.2d 289 (1967); *Merchants Indem. Corp. v. Eggleston, supra.*

This leads to the second reason which is that control of the defense is vitally connected with the obligation to pay. It cannot be imagined that an insurance carrier, Federal in this case, would permit an insured to control the defense of a tort claim for the first 10 months and then voluntarily pay the ultimate judgment. If the Gamel interests were not protected by their insurance policy with Federal, they had the right to arrange for the initial investigation, settlement negotiations, and the conduct of the law suit.

The third reason why Federal may not assume manage-

ment of the defense yet deny liability is the possibility of a conflict of interest. During the 10 months that Federal's attorneys had exclusive control of the defense of the claims, a defense for Federal against the Gamel interests on the question of coverage could be simultaneously prepared. This is not to say that that is what has occurred in this case. The high professional standing of the attorneys employed by Federal forecloses this possibility, but, as was said in *Van Dyke v. White*, 55 Wn.2d 601, 349 P.2d 430 (1960), at 613:

> this is not the test for determining a lawyer's conduct when confronted with the necessity of choosing between conflicting interests. The standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated.

As a matter of law and in the absence of extraordinary circumstances, 10 months is too long a period for counsel for Federal to occupy the dual role.

The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, Federal irrevocably fixed the course of events concerning the law suit for the first 10 months. Of necessity, this establishes prejudice.

Federal further contends that it was not told that the estoppel and waiver issue would be raised in the summary judgment proceedings until after the motions for summary judgment were filed. It appears that those issues were fully presented and argued in the documents which the trial court considered in arriving at its decision to grant summary judgment. CR 15(b); *Albert v. Joralemon*, 271 F.2d 236 (9th Cir. 1959).

Federal also contends that it should have been given the chance to depose certain witnesses concerning the issues of estoppel and waiver. The opportunity was sought by a motion for reconsideration filed August 7, 1974, 6 days after the court rendered its oral decision. Subsequently, several affidavits were filed. The most that can be learned from these is that at one point Mr. Gamel was told there was a

coverage dispute between Transamerica and Federal. The motion for reconsideration was argued by counsel and denied by the court on September 24, 1974. Thereupon, summary judgment was entered.

 Federal had ample time to make further discovery or, at the very least, prepare and file affidavits giving some reasonable support to the motion. We believe the trial court did not abuse its discretion in refusing to grant additional time for discovery purposes. *Jewett-Gorrie Ins. Agency, Inc. v. Visser*, 12 Wn. App. 707, 531 P.2d 817 (1975).

The next question is whether the court erred in ordering judgment in favor of Transamerica, Reserve, and Continental in addition to the Gamel interests. In the summary judgment, the court did decide that there was an issue of material fact as to the coverage afforded by the Federal policy. As related, the court based its decision on waiver and estoppel thereby eliminating a factual question of coverage.

We believe there is a material question of fact as to the availability of the defense of estoppel to the other three insurance companies. There is no question of waiver because if there was no coverage, Federal had nothing to waive. As already pointed out, the reasons for the application of the doctrines of estoppel on behalf of the Gamel interests are that the assumption of the defenses prevented them from defending themselves, control of the defense is vital to the obligation to pay, and there is the possibility of a conflict of interest. These reasons may apply with equal effect to Transamerica, Reserve, and Continental, depending upon the precise terms of their policies and their relations with each other. The court must decide the question of the application of estoppel in the controversy between Federal and the other insurance companies after determining the facts.

The judgment is affirmed as to the Gamel interests and

reversed as to the Transamerica, Reserve, and Continental insurance companies.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied February 10, 1977.

Review denied by Supreme Court June 28, 1977.