## W. O. Hickok Manufacturing Company v. Unigard Mutual Insurance Company

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

*Robert C. Spitzer,* for plaintiff.
*G. Thomas Miller,* for defendant.

MORGAN, *J.,* July 17, 1979—Plaintiff moves us to take off a compulsory nonsuit.

On August 20, 1974 plaintiff (Hickok), a Harrisburg manufacturer of printing machines, was sued in St. Louis, Missouri on a products liability claim arising out of an accident that occurred there on August 20, 1969. Defendant (Unigard) which had issued a comprehensive general liability policy to plaintiff, engaged counsel in St. Louis and undertook the defense. On May 19, 1975, shortly before scheduled trial, defendant informed plaintiff that it was denying coverage and tendering back the defense because the provision for products liability in plaintiff's policy did not become effective until October 10, 1969. However, it later agreed with plaintiff to continue to provide the defense through its St. Louis counsel who subsequently settled the case on behalf of plaintiff for $40,000, which plaintiff paid. Plaintiff then brought this suit to recover the $40,000, claiming that having assumed the defense of the action defendant was estopped to deny coverage.

In Saracena v. St. Paul-Mercury Indemnity Co., 2 D. & C. 2d 356, 66 Dauph. 278 (1954), Judge Walter R. Sohn, of this court, analyzed the Pennsylvania cases bearing on the question and concluded that we follow the general rule that where an insurance

company which knows or should have known of a defense of nonliability under the policy assumes the defense of a claim and conducts the matter to final judgment, it is estopped from thereafter raising the defense of noncoverage. Prejudice, which is an essential element of an estoppel is, in such case, conclusively presumed to have resulted to the insured by the conduct of the insurer. But where the insurer disclaims and withdraws the defense prior to final judgment, prejudice to the insured is not presumed and the insurer is not estopped from raising the defense of noncoverage without proof that the insured was actually prejudiced by its conduct. See Malley v. American Indemnity Co., 297 Pa. 216, 146 Atl. 571 (1929); Graham v. U.S. Fidelity & Guaranty Co., 308 Pa. 534, 162 Atl. 902 (1932); Lewis v. Fidelity & Casualty Co., 304 Pa. 503, 156 Atl. 73 (1931); Gross v. Kubel, 315 Pa. 396, 172 Atl. 649 (1934); Antone v. New Amsterdam Casualty Co., 335 Pa. 134, 6 A. 2d 566 (1939); Basoco v. Just, 154 Pa. Superior Ct. 294, 35 A. 2d 564 (1944); Ashland Window & Housecleaning Co., Inc. v. Metropolitan Casualty Insurance Co. of N.Y., 269 App. Div. 31, 53 N.Y.S. 2d 677 (1945); R. A. Hanson Co., Inc. v. Aetna Casualty & Surety Co., 15 Wash. App. 608, 550 P. 2d 701 (1976); Boulet v. Millers Mut. Ins. Ass'n. of Ill., 362 F. 2d 619 (8th Cir. 1966); Anno., Insurer's Assumption of Defense as Waiver of Non-coverage Defense, 81 A.L.R. 1326, supplemented, 38 A.L.R. 2d 1148.

At trial, Hickok rested its case simply on the proof that Unigard did not withdraw its defense until eight days prior to the scheduled trial date and argued that, without more, prejudice to Hickok was conclusively presumed from its relinquishment of control of the litigation during the previous eight

months that the case had been in process. Some brief testimony by the president of Hickok that had he earlier learned about the noncoverage he would have employed his own counsel and conferred with him on the management of the case illustrates but does not add to the presumption argued for by plaintiff.

What the argument of Hickok ignores is that the ultimate fact of prejudice in these cases is a financial loss that an insured suffers or may have suffered because the insurer assumed the defense. Management of the case is only relevant as it bears on that ultimate fact. Where the insurer waits to disclaim until after the case is tried and judgment entered against its insured, there is reason to presume prejudice to the insured. The course cannot be rerun and it would be futile to attempt to prove or disprove that the insured would have fared better on his own: Merchants Indemnity Corp. of N.Y. v. Eggleston, 37 N.J. 114, 129, 179 A. 2d 505, 512 (1962). However, where the insurer withdraws prior to trial, proof of the fact of prejudice from withdrawal is not an undue burden to place upon an insured claiming estoppel. Prejudice may be shown through loss of a favorable settlement, inability to produce all testimony existing in support of the defense, inability to produce any material witness, loss of the benefit of any defense in law or in fact through reliance upon the insurer's promise to defend, or withdrawal by the insurer so near in time to trial that the insured is unable to prepare his defense. This list is not exhaustive but suggests ways in which the insured may sustain his burden of proving prejudice: Hanson, supra; Callahan v. American Motorists Insurance Co., 56 Misc. 2d 734, 289 N.Y.S. 2d 1005 (1968); State Farm Mut.

Auto Ins. Co. v. Kay, 26 Utah 2d 195, 487 P. 2d 852 (1971).

Hickok proved nothing except the delay in the disclaimer and this is not enough, especially under the other circumstances of this case: (1) Hickok made no effort to obtain a continuance of the trial date upon learning of Unigard's disclaimer, stating that, "We felt there was nothing to be gained by a stay;" (2) Contrary to its claim of prejudice from surrendering the defense to Unigard, Hickok expressed satisfaction with Unigard's counsel by rejecting an earlier offer to engage its own counsel to associate with Unigard's for excess liability defense and by accepting Unigard's tender of its counsel for the continued defense after the disclaimer, testifying that it (Hickok) would have retained, *at its own expense,* the very same lawyer for that purpose; and (3) Hickok admitted that the $40,000 settlement obtained for them by Unigard's counsel was not only reasonable and less than the figure he had recommended to his company but also that it was based on an evaluation of the claim by its own counsel in Harrisburg.

What is this substantial right to control the suit upon which Hickok rests its case? A right to lose one's case through his own efforts? Obviously not. The right is meaningless in the context of the prejudice necessary to invoke an estoppel unless it refers to a right to conduct one's case in order to win it or at least to do better for himself than his insurer would have done. The law offers recompense, not rewards. The doctrine of estoppel is applied only to promote justice and fair dealing. If we, by estoppel, extend the coverage afforded by Unigard's policy beyond what it contracted for, then Unigard has been exposed to a risk it did not insure against and

for which Hickok paid no premium. The record was devoid of evidence that either the assumption of Hickok's defense or the subsequent disclaimer and withdrawal resulted in any prejudice to Hickok. By its own admission, Hickok regained control of its case and maintained it through a settlement which it deemed satisfactory. There was nothing for the jury to decide and the nonsuit was properly entered.

Hickok did not pursue in its brief the argument that it had, in fact, paid sufficient premium for a full year's products liability coverage and that the provision was thus in force on the date of the accident. The argument plainly had no merit. The audit report from which its witness, Allen, opined that the premium paid was calculated on total annual sales does not warrant that conclusion. The report refers only to audited sales as the premium base for the period of products liability coverage which by reference to the policy indicated an effective date of October 10, 1969. Further, even assuming the payment of an amount equal to a full year's premium, this fact alone would not give rise to coverage in a policy where it was expressly excluded. Without a meeting of minds as to the essential terms of the policy, the payment of an insurance premium is not sufficient to create a contract of insurance. See Zayc v. John Hancock Mutual Life Ins. Co., 338 Pa. 426, 430, 13 A. 2d 34 (1940). The policy expressly states an effective date of October 10, 1969 for the products liability coverage and no evidence was produced to show that this was not the intention of the parties. Before a court can reform an insurance policy, there must be evidence that a mutual mistake thwarted the actual intent of the parties. See Bugen v. New York Life Insurance Co., 408 Pa. 472, 184 A. 2d 499 (1962).

## ORDER

And now, July 17, 1979, plaintiff's motion to take off the nonsuit is denied.